```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
SHIRLEY S. DURANT,                                          :
                                                            :    MEMORANDUM DECISION
                              Plaintiff,                    :    AND ORDER
                                                            :
                - against -                                 :    19-cv-6857 (BMC)
                                                            :
FRIENDS OF CROWN HEIGHTS                                    :
EDUCATIONAL CENTERS, INC., FRIENDS                          :
OF CROWN HEIGHTS DAY CARE CENTER,                           :
MAUREEN JOHNSON, and PATRICIA                               :
ATKINS,                                                     :
                                                            :
                              Defendants.                   :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Presently before me in this disability discrimination case is defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff has not opposed, but the complaint adequately asserts at least one federal claim for relief. The motion is therefore granted in part and denied in part.

### SUMMARY OF COMPLAINT

Beginning on September 16, 2016, until the termination of her employment on May 17, 2019, plaintiff was a "Lead Teacher" for defendant Friends of Crown Heights Educational Centers, Inc. ("FOCH"). FOCH is a not-for-profit corporation that operates private schools and pre-kindergarten programs at several locations, all subject to the regulations of the New York City Department of Education ("DOE").

Plaintiff has an ambulatory disability arising from two factors: (1) she is 5'4" tall and weighs 327 lbs.; and (2) she was in an automobile accident in 1998 that caused her serious leg

injuries. Within a few months after she began employment, an Instructional Coordinator for the DOE, who visited the school monthly, told plaintiff that it was unnecessary for her to accompany her class downstairs or to the rooftop for "playtime," since plaintiff also worked with an assistant teacher and two teachers' aides who could accompany her class.

This was one of the two accommodations that plaintiff alleges defendants made to accommodate her disability. The other was to have a full-sized chair in the classroom, as the children's chairs were too small for her and she was unable to stand for the entire teaching day. The accommodations had been approved by FOCH through its Regional Director, defendant Maureen Johnson.

That changed when defendant Patricia Atkins was hired as Educational Director of the facility in which plaintiff was working in January 2019. Despite plaintiff telling Atkins of her disability and the accommodations she had received up until then, Atkins told plaintiff that she had to be physically present with her class at all times.

There were other points of tension between plaintiff and Atkins as well. First, Atkins refused to provide, and even refused to allow plaintiff to order, adequate teaching supplies for her class, saying that there was no money for teaching supplies. Second, after plaintiff had repeatedly complained about the lack of school supplies, Atkins or Johnson removed the adult-sized chair from her classroom and it could not be located. Plaintiff went out and purchased her own chair.

At some point plaintiff elevated her protests about the lack of school supplies to Johnson and to the DOE. Johnson convened a staff meeting among plaintiff, Atkins, and three others. After the meeting was set up, "an incident occurred," which enabled Atkins, at the meeting, to falsely state that she had observed plaintiff commit child abuse by improperly restraining a child

with her arms around his neck. Atkins also said that "if [plaintiff] wasn't able physically to do the job she should resign." Johnson accepted Atkins' version of the child abuse event without doing an investigation.

Atkins called the Administration for Children's Services ("ACS") and reported the alleged child abuse. ACS contacted plaintiff, and plaintiff maintained that the report was "fraudulent." Johnson called plaintiff into her office and gave her the choice of resigning or being terminated. Plaintiff resigned "under protest."

The complaint contains five claims for relief that are substantially duplicative. The first is under the ADA for failure to accommodate plaintiff's disability by requiring her to accompany her class up and down stairs and for the removal of her chair. The second claim is also under an ADA failure to accommodate theory and is nearly identical to the first, except that it adds the allegation that Atkins filed a false report with ACS to force plaintiff out because of her disability. The third, although also alleging "discrimination" like the first two, alleges that defendants retaliated against plaintiff because of her complaints about the removal of her accommodations by not ordering supplies for her class and by filing a false report with ACS. The Fourth and Fifth claims raise the same allegations under the New York State Human Rights Law and the New York City Human Rights Law, respectively.

**DISCUSSION**

Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), require a plaintiff seeking to avoid dismissal to plead factual allegations in her complaint sufficient to raise a right to relief above the speculative level. See also Brown v. Daikin America Inc., 756 F.3d 219, 228 n.10 (2d Cir. 2014). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't,

3

592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570); see also Iqbal, 556 U.S. at 678 (same).

To apply that standard, the court accepts as true all well-pleaded factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.  If the court can infer no more than "the mere possibility of misconduct" from the factual averments, id. at 679, or if, in other words, the well-pleaded allegations of the Complaint have not "nudged [the] claims across the line from conceivable to plausible," dismissal is appropriate, Twombly, 550 U.S. at 570.

Plaintiff's amended complaint is far from a model of good pleading but there are some plausible claims in there somewhere.  To plead a failure to accommodate claim, a plaintiff must allege facts showing that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McMillan v. City of N.Y., 711 F.3d 120, 125-26 (2d Cir. 2013) (*colatus*[1]).

Those elements are in the complaint.  First, plaintiff alleges that she has difficulty walking, particularly climbing stairs, and standing for long periods of time, and gives particular reasons why she had that disability. Her allegation is that since her accident in 1998,

> because . . . of her physical conditions (accident/weight) she didn't have cartilage in her knees, which in addition to making it hard to go up and down stairs, it also made it difficult to sit in the pre-k chairs, which were inadequate for her person or to stand for the entirety of the class daily.

---

[1] I.e., edited citation.

4

The definition of "disability" under the ADA, which is to be construed broadly, 42 U.S.C. § 12102(4)(A), includes having a physical impairment that "substantially limits one or more major life activities of such individual." Id. at § 12102(1)(A). "Major life activities," in turn, include walking and standing. Id. at § 12102(2)(A). Thus, at least for pleading purposes, allegations of serious limitations on the ability to walk and stand can be a disability within the meaning of the ADA. See Colas v. City Univ. of N.Y., No. 17-cv-4825, 2019 WL 2028701, at *4 (E.D.N.Y. May 7, 2019) (denying motion to dismiss where plaintiff alleged that "as a result of her leg muscle spasms, neck pain, fatigue and shortness of breath, episodes of cramping and contractions, ligament pain, back pain, along with joint pain, nausea and headaches, her function was greatly altered, namely in her baseline walking pattern, speed, circulation and coordination of balance") (*colatus*); DeAngelis v. Long, No. 18-cv-755, 2018 WL 2582613, at *5 (D. Conn. June 4, 2018) (plaintiff "sufficiently alleged facts showing that he has a qualifying disability" where he "allege[d] that he suffers from degenerative disc disease with a disc protrusion displacing the S1 nerve" and that "[a]s a result, walking is painful and he must use a cane"); Jansson v. Stamford Health, Inc., No. 16-cv-260, 2017 WL 1289824, at *13-14 (D. Conn. Apr. 5, 2017) (plaintiff "alleged [a] plausible claim[ ] for discrimination . . . under the ADA for the disabilit[y] of 'mid-foot arthritis'" where the plaintiff alleged that the arthritis caused swelling of her ankle and "pain walking and standing"); Nodelman v. Gruner & Jahr USA Pub., No. 98-cv-1231, 2000 WL 502858, at *7 (S.D.N.Y. April 26, 2000) (denying defendants' ADA summary judgment motion where plaintiff set forth evidence that his "ability to climb stairs is 'substantially impaired,' since his ability is 'significantly restricted' as compared to the average person in the population" because of his disc herniation and radiculopathy).

Second, plaintiff alleges that defendants had notice of her disability and indeed initially accommodated it. She doesn't do it very clearly, but when she alleges that she "was afforded certain 'reasonable accommodations' at the time of her employment which acknowledged her disability and allowed her to perform the duties assigned to her," namely, not climbing stairs and having an adult chair, I have to draw the favorable inference that she requested those accommodations, else why would she have received them? She also tucks into one paragraph the allegation that once Atkins removed her stair privileges and chair, "[d]efendant JOHNSON was aware of ATKINS' elimination of the 'reasonable accommodation' that had been approved by defendant[s] JOHNSON, FOCH, and DAY-CARE when she was hired." Again, that's a back-handed way of saying that she requested and received accommodations when she was hired, but the standard in Rule 12(b)(6) practice requires me to read it in her favor.

Moreover, this case isn't about approving accommodations when plaintiff was first hired, or at least not just about that. It's about changing the conditions of her workplace to eliminate features that accommodated her disability that she had enjoyed, for whatever reason, when she started. The alleged violation of the ADA is that once those accommodations were removed, plaintiff made known her disability loudly, and yet could not get them back. Defendants cannot dispute that at that latter point, at least, the amended complaint alleges they were given notice of her disability and a request to accommodate it.

Third, there is no question that plaintiff has adequately pleaded that she could do her job well with the no-stairs and chair accommodations. The amended complaint is replete with allegations about how she was doing her job well with those accommodations until defendants took them away.

The fourth factor is similarly straightforward; plaintiff never got back her no-stairs and chair privileges despite requesting them. Although plaintiff states that she purchased her own chair to use, she also avers that defendants told her that she was "to stand at all times in class." Based upon the remainder of plaintiff's allegations, I can reasonably infer that this directive was never rescinded. Thus, plaintiff has pleaded a plausible failure to accommodate claim.

Because a failure to accommodate claim is a type of disability discrimination claim, see 42 U.S.C. § 12112(b)(5)(A); Ray v. Weit, 708 Fed. App'x 719, 721 (2d Cir. 2017), I cannot tell the difference between Count I (ADA accommodation) and Count II (ADA discrimination). Since Count II is slightly more descriptive than Count I, Count I is dismissed as duplicative and Count II will survive the present motion to dismiss. See Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant" matter); Ningbo Yang Voyage Textiles Co., Ltd. v. Sault Trading, No. 18-cv-1961, 2019 WL 5399973, at *7 (E.D.N.Y. Sept. 10, 2019) ("Courts frequently dismiss duplicative claims that arise 'from the same facts' and seek 'the same relief' as another claim."), report and recommendation adopted, 2019 WL 5394568 (E.D.N.Y. Oct. 22, 2019).

As for plaintiff's retaliation claim, her allegations fall short of establishing that defendants took adverse employment actions against her for pursuing a protected activity. To survive a motion to dismiss, a complaint for retaliation under the ADA must allege facts plausibly showing that: (1) the plaintiff participated in a protected activity; (2) the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

7

Requesting a reasonable accommodation for a disability is a protected activity under the ADA. See Weixel v. Bd. of Educ. Of City of N.Y., 287 F.3d 138, 149 (2d Cir. 2002) (*colatus*). It was thus sufficient for plaintiff to allege that "in a one on one meeting with [Atkins] . . . DURANT informed ATKINS of her physical maladies and that, together with the teacher's aide and the assistant teacher assured her that they had a good working team and were serving children." Additionally, plaintiff avers that, after the chair was taken, she "tried to ascertain what had happened to the chair" by asking defendant Johnson about it. Although certainly lacking something in clarity, I easily infer from these allegations that plaintiff was requesting that she continue to receive these accommodations for her disability. And given that plaintiff allegedly made these statements to Atkins and Johnson, she sufficiently pleads defendants' knowledge of the protected activity.

But that's where the "well-pleaded" allegations end. Plaintiff pleads no facts tending to show that she suffered adverse employment actions *because of* her engagement in a protected activity (i.e., requesting reasonable accommodations for her disability). Although she allocates a great deal of space in the complaint to detailing the lack of supplies the school provided her, this is not actually retaliatory conduct, as she appears to claim. Indeed, plaintiff avers that

> In *November 2017* DURANT was transferred from another location (374 pine St.) to 20 Sutter avenue center where she learned/observed that there was a scarcity of supplies for her class and shortly thereafter DURANT spoke with JOHNSON about the lack of books and supplies and was told to provide her with a supply request. Every couple of months she (again) asked defendant JOHNSON, about my supply request, which had not be [*sic*] addressed.

(Emphasis added.) She then avers that Atkins was hired "[o]n or about *January 2019*," and it was at that point that "she immediately put an[] end to [plaintiff's] 'reasonable accommodations'" (emphasis added). Thus, the supply shortage pre-dates the protected activity

8

by more than a year and cannot therefore be considered retaliatory conduct. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001).

Nor has plaintiff plausibly alleged that her forced resignation – which, to be sure, is an adverse action – was in any way connected to her request for disability accommodations. Indeed, it seems plaintiff's termination is a more direct result of her complaints about school supplies than anything else. Plaintiff only conclusorily states under the Count III section of her complaint that "the real reason for her discharge was due to her disability" (in conjunction with "retaliation for her reports to NYC officials of substandard educational opportunities"). But the rest of that section ascribes plaintiff's discharge solely to her constantly complaining about the inadequate classroom funding and teaching supplies, which is not a protected activity under the ADA. Given the allegations in the complaint, it is too much of a stretch to infer that the termination had anything to do with plaintiff's disability or the accommodation requests she made.

This conclusion is further supported by the significant span of time between the protected activity and the discharge, which, although in itself is not dispositive of retaliation or lack thereof, see Montanez v. McDean LLC, 770 Fed. App'x 592, 595 (2d Cir. 2019), certainly makes it even less plausible in this case, see Clark Cty. School Dist. V. Breeden, 532 U.S. 268, 273-74 (2001). Specifically, plaintiff began informing Atkins "of her physical maladies" and the necessity of her accommodations around January 2019, but it wasn't until mid-May 2019 that Atkins and Johnson accused plaintiff of harming a student, thus setting the stage for her termination. This four-month delay largely undercuts any retaliatory causal link plaintiff alleges. See Harrison v. U.S. Postal Serv., 450 Fed. App'x 38, 40-41 (2d Cir. 2011) (holding that adverse action taken "at least several months . . . after [plaintiff] engaged in protected activity" was

9

"insufficient to support the necessary causal connection"); Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (holding three-and-a-half month period insufficient to show a "causal nexus").

Because plaintiff fails to connect her self-advocacy under the ADA with her termination, the retaliation claim is dismissed.

Finally, Counts IV and V of the complaint are claims under the state and city analogues to the ADA. To the extent plaintiff pleads a failure to provide reasonable accommodations for her disability under these statutes, these claims are sufficient at this stage of the litigation. It bears mentioning, however, that plaintiff appears to be under the misunderstanding that the denial of additional school supplies equates to a failure to reasonably accommodate her disability. This is incorrect – I can't see any way in which providing more classroom materials could soften the hardships of her leg injury or weight issues.

## CONCLUSION

Defendants' [16] motion to dismiss is granted in part and denied in part. Counts I and III are dismissed.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
      April 23, 2020

10